IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

NICHOLAS SCOTT WERLING,

                                        Plaintiff,

   v.

ANDREW BARNHILL, JENNIFER FORTUNE,
CRYSTAL MCCLAIN, KIMBERLY MILLER, and
DILLON HAGSTROM,

                                        Defendants.[1]

OPINION and ORDER

23-cv-215-jdp

Plaintiff Nicholas Scott Werling, proceeding without counsel, alleges that various defendants knowingly filed two frivolous petitions for his commitment as a juvenile and then failed to return his cell phone after confiscating it. I granted Werling leave to proceed on claims under the Fourth Amendment to the United States Constitution.

There are three sets of defendants: (1) Jefferson County defendants Andrew Barnhill, Jennifer Fortune, and Kimberly Miller; (2) private defendant Crystal McClain; and (3) City of Beloit police officer Dillon Hagstrom. This order addresses several motions filed by the parties, including defendants' motions to dismiss or for summary judgment regarding Werling's claims against them. I will grant each of those motions because defendants had arguable probable cause to detain him and because Officer Hagstrom was not responsible for permanently depriving Werling of his cell phone.

---

[1] I have amended the caption to reflect the names of the remaining John or Jane Doe defendants as identified by Werling. *See* Dkt. 88.

ANALYSIS

**A.  Werling's motion for default judgment**

Werling moves for default judgment against defendants McClain and Barnhill under Federal Rule of Civil Procedure 55. Dkt. 63. I take him to be contending that he is entitled to default judgment because he did not receive responsive pleadings from McClain or Barnhill by their 60-day deadline to do so after they were sent waivers of service on August 15, 2024, that they executed. *See* Federal Rule of Civil Procedure 4(d)(3).

Defendants' responsive pleadings weren't late. Sixty days from August 15, 2024, was Monday, October 14, 2024, a federal holiday (Columbus Day), which means that the deadline was extended to the next day, October 15. *See* Federal Rule of Civil Procedure 6(a)(1)(C). McClain filed her motion to dismiss on October 14 and Barnhill filed his motion to dismiss on October 15. I will deny Werling's motion for default judgment.

**B.  Werling's motion to suppress and for sanctions**

Werling moves to suppress materials submitted by the county defendants' lawyer, Adam Meyers, and to sanction Meyers for submitting them. Dkt. 70. The materials in question are court documents from Werling's state-court civil-commitment proceedings generally sealed from the public under Wisconsin law that the county defendants submit in support of their motion to dismiss. *See* Dkt. 60. But Werling chose to bring this lawsuit about events surrounding his commitment proceedings, and the documents that Meyers submitted are relevant to Werling's claims. Meyers has properly filed these documents under seal and there is nothing inappropriate about defendants using those records as part of their defense. I will deny Werling's motions to suppress and for sanctions.

### C.  Defendants' motions to dismiss

The county defendants and defendant McClain move to dismiss them from Werling's complaint. Dkt. 53 and Dkt. 58 (McClain's and Barnhill's original motions); Dkt. 90 (Miller's motion to join Barnhill's motion after being identified as a Jane Doe defendant); Dkt. 93 and Dkt. 94 (defendants' renewed motions following Werling supplementing his complaint to name the Doe defendants). Werling alleges that these defendants filed frivolous petitions for his commitment in March and November 2021.

#### 1.  Background

The following facts are drawn from the allegations in Werling's amended complaint, Dkt. 33, and Werling's court records that are central to the complaint submitted by defendants, Dkt. 60. Because the court records and the documents contained in them are referenced repeatedly in Werling's complaint, I will consider them for purposes of deciding defendants' motion to dismiss. *See Williams v. Curran*, 714 F.3d 432, 436 (7th Cir. 2013) (On a motion to dismiss, "a court may consider, in addition to the allegations set forth in the complaint itself . . . documents that are central to the complaint and are referred to in it"). Werling's state-court proceedings are the proper subject of judicial notice. *See Opoka v. INS*, 94 F.3d 392, 395 (7th Cir. 1996).

In March 2021, Werling, who was 16, was housed at a youth group home in Milwaukee. Corporation counsel filed a petition for examination based on the affidavits of defendants Barnhill, McClain, and Fortune. Dkt. 60-1. Defendants Barnhill and Fortune worked for Jefferson County: Barnhill was Werling's therapist and Fortune was a social worker who worked with Werling's support team. Defendant McClain, who was not employed by the county, was his group home director. Werling alleges that the defendants based their petition upon

3

allegations that "[Werling] said he was going to purchase several different semiautomatic rifles, shotguns, and pistols, and that [Werling] had recently . . . consumed [raw] human brain matter." Dkt. 33, at 8. Defendants' affidavits supporting the petition show that they also based their petition on Werling's interest in school shootings, statements in a school final exam that "people [who] enjoy listening to garbage music . . . should be exterminated" and that "we should have a holocaust . . . . Kill them all!" Dkt. 60-1. Werling contends that defendants knew that he did not meet the statutory and constitutional requirements for commitment but petitioned for his commitment anyway.

A circuit court judge issued an "order for detention" stating that defendants' petition met the requirements of Wis. Stat. Ch. 51. Werling was then detained by Milwaukee police. A short time later, the court held a probable-cause hearing and determined that Werling was (1) mentally ill, drug dependent, or developmentally disabled; (2) a proper subject for treatment; and (3) dangerous to himself or others. Dkt. 60-3. The case was transferred from Milwaukee County to Jefferson County. Werling was then examined by two mental health professionals, one finding that he was a proper subject for treatment, the other finding that he did not suffer from a mental illness as defined in state statutes. Dkt. 60-13, 60-14. Werling's commitment proceeding was later dismissed pursuant to a settlement agreement. Dkt. 60-6.

Werling was seized for mental health reasons again in November 2021, from a different youth shelter. Defendant social worker Miller, a Jefferson County employee who was a person authorized to take a juvenile into custody under Wis. Stat. § 51.15(1), submitted a "statement of emergency detention" detailing alleged dangerous behavior. Dkt. 60-9. Miller alleged that Werling made social media posts with firearm magazines, made comments about school

shootings, made a statement about "wanting to be 'responsible for people's deaths,'" was found in possession of "harmful materials," and had a history of mental illness. *Id.*

Werling as detained by defendant City of Beloit police officer Hagstrom, who held him for about an hour before transferring Werling and his property to the Fort Atkinson Police Department. Werling's cell phone was confiscated and he was never given it back.

During his detention, Werling told Miller that he did not meet the requirements for commitment, and Miller responded that she "doesn't care about the law" and that Werling would be committed "whether he likes it or not." Dkt. 33, at 12. When Miller asked Werling if he was homicidal or suicidal, he responded that he was not. *Id.* Werling alleges that a doctor at the facility at which he was detained recommended dismissing the commitment proceedings. This case was dismissed shortly after his detention pursuant to a motion to dismiss by corporation counsel, stating that he did not meet the requirements for involuntary commitment according to staff at the mental health center. Dkt. 60-11.

### 2. Analysis

#### a. March 2021 proceedings

In March 2021, defendants filed a petition for Werling's mental health examination. Werling alleges that the three defendants involved in this petition, McClain, Fortune, and Barnhill, based their petition on allegations that Werling said he was going to purchase firearms and had recently ingested raw human brain matter.

Defendants raise a number of defenses in their motions to dismiss, including that they have both absolute and qualified immunity under federal law, they have qualified immunity under Wis. Stat. § 51.15(11), and that Werling's claims are barred by the *Rooker-Feldman* doctrine, *Heck v. Humphrey*, 512 U.S. 477 (1994), and the doctrine of issue preclusion.

Defendant McClain also contends that as a non-government employee she cannot be held liable under 42 U.S.C. § 1983. I need not discuss each theory because I conclude that federal-law qualified immunity resolves this set of Fourth Amendment claims.

Mental health seizures are analyzed under the Fourth Amendment's "probable cause standard." *Fitzgerald v. Santoro*, 707 F.3d 725, 732 (7th Cir. 2013). Probable cause exists only if there are reasonable grounds to believe that the person seized is subject to seizure under the governing legal standard. *Id* at 732. Generally, a mental health seizure is lawful if there is probable cause to believe that the person seized is a danger to himself or others. *Bruce v. Guernsey*, 777 F.3d 872, 876 (7th Cir. 2015). Under Wis. Stat. § 51.15(1)(ar)(2.), a juvenile may be taken into emergency mental health custody for various reasons, including if they demonstrate "[a] substantial probability of physical harm to other persons as manifested . . . by evidence that others are placed in reasonable fear of violent behavior and serious physical harm to them, as evidenced by a recent overt act, attempt or threat to do serious physical harm on his or her part."

The doctrine of qualified immunity provides an added layer of protection to government officials, allowing for reasonable mistakes in judgment. Defendants are entitled to qualified immunity on Werling's Fourth Amendment claims if "a reasonable [official] could have mistakenly believed that probable cause existed." *Fleming v. Livingston Cnty., Ill.*, 674 F.3d 874, 879–80 (7th Cir. 2012) (internal quotes omitted). This standard is often termed "arguable probable cause." *Id.* Arguable probable cause is established when "a reasonable [official] in the same circumstances and with the same knowledge and possessing the same knowledge as the officer in question could have reasonably believed that probable cause existed in light of well-established law." *Id.* at 880.

6

A court ordinarily cannot dismiss a complaint on a Rule 12(b)(6) motion relying on an affirmative defense such as qualified immunity, but it can if the complaint and matters subject to judicial notice clearly show that "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *McMath v. City of Gary, Ind.*, 976 F.2d 1026, 1031 (7th Cir. 1992); *see also Ewell v. Toney*, 853 F.3d 911, 919–20 (7th Cir. 2017) (affirming a Rule 12(b)(6) dismissal on qualified immunity ground).

Because the Milwaukee County judge signed the order of detention approving defendants' petition for Werling's detention and then later made another finding of probable cause to keep Werling detained for further proceedings, this case is akin to one in which a judge approves an arrest warrant or later makes a finding of probable cause after arrest. "When a judge authorizes an arrest, as one did here, we presume the validity of the warrant and the information offered to support it." *Johnson v. Myers*, 53 F.4th 1063, 1069 (7th Cir. 2022) (internal quotations and alterations omitted). That presumption can be challenged if the officer seeking the warrant made false statements to the judge or if the warrant itself lacks any reasonable basis for probable cause to detain, but that isn't the case here. Although my screening order states that Werling alleges that defendants "fabricated grounds" for his detention, it is now clear that Werling does not dispute the truth of the underlying allegations in defendants' petition for commitment; rather he contends that that there wasn't probable cause to detain him because he didn't perform an overt act of harm or make an overt threat of harm. But defendants' allegations that Werling said that he ingested raw human brain matter, expressed interest in committing a violent crime, and submitted assignments at school expressing interest in "exterminating" and having a "holocaust" of groups of people was enough to support at least arguable probable cause for his detention. This is particularly so given the

dearth of circuit precedent detailing the contours of Fourth Amendment mental health seizures. *See, e.g., Ruff v. Han*, No. 19-CV-5371, 2024 WL 4346609, at *7 (N.D. Ill. Sept. 30, 2024).

So I will grant defendants' motions to dismiss Werling's claims regarding his March 2021 detention.

### b. November 2021 proceedings

The circumstances of Werling's November 2021 detention are different from the March 2021 detention. Defendant Miller caused Werling to be detained under her authority under Wisconsin law to do so, not by first getting approval from a judge. And there was no probable cause finding afterward; instead, the commitment proceedings were dismissed. (Defendants point out that there wasn't a finding of a lack of probable cause; rather, corporation counsel moved to dismiss the proceedings on the basis that the more onerous burden of proof for involuntary commitment couldn't be met.)

As with his March 2021 detention, Werling doesn't dispute the underlying allegations in Miller's November 2021 statement of emergency detention; instead he contends that there wasn't probable cause to detain him because he didn't perform an overt act of harm or make an overt threat of harm. But Miller's underlying allegations against Werling are similar to those that supported a finding of probable cause in March 2021: in particular, he made comments about school shootings and a statement about "wanting to be responsible for people's deaths," while also posting images of him with firearm magazines. Miller also noted Werling's history: the March 2021 materials and other court documents showing that Werling had previously been committed on multiple occasions and that he frequently indicated his fascination with school shootings and their perpetrators. Based on these allegations and materials, I conclude that Miller had at least arguable probable cause to issue her statement of emergency detention.

8

In his complaint Werling notes statements by Miller that she "doesn't care about the law" and that Werling would be committed "whether he likes it or not," by which I take him to suggest that Miller didn't actually believe that there was probable cause to detain him. But what Miller subjectively thought or intended is irrelevant to analyzing the reasonableness of a seizure, which is an objective inquiry. *See Whren v. United States*, 517 U.S. 806, 813 (1996) ("[W]e have been unwilling to entertain Fourth Amendment challenges based on the actual motivations of individual officers[.]"); *United States v. Taylor*, 596 F.3d 373, 378 (7th Cir. 2010) ("Under current Supreme Court law, then, the subjective motivations of the agents are irrelevant to the Fourth Amendment analysis."). So I will grant defendants' motion to dismiss regarding Werling's November 2021 detention.

## D. Defendant Hagstrom's motion for summary judgment

Defendant Beloit police officer Hagstrom moves for summary judgment on Werling's Fourth Amendment claim against him for failing to return Werling's phone after his November 2021 detention. Dkt. 78 and Dkt. 96. I granted Werling leave to proceed on the theory that "the permanent taking of property . . . amounts to a 'seizure' under the Fourth Amendment." *Pepper v. Vill. of Oak Park*, 430 F.3d 805, 809 (7th Cir. 2005).

A detailed discussion of the proposed findings of facts regarding this claim is unnecessary. Hagstrom asserts—and Werling explicitly does not dispute—that Hagstrom's seizure of Werling was limited to initially detaining him on November 5, 2021, for about an hour, before transferring him and his property to the Fort Atkinson Police Department. There is no evidence suggesting that Hagstrom was responsible for the failure to return Werling's cell phone to him once he was placed in the custody of Fort Atkinson police. Thus the undisputed evidence shows that Hagstrom did not permanently deprive Werling of the cell phone.

Rather than oppose Hagstrom's motion for summary judgment regarding the permanent-confiscation claim, Werling pivots to argue that Hagstrom violated his Fourth Amendment rights by seizing him without probable cause for doing so. I didn't grant Werling leave to proceed on such a claim. But even if I had, Hagstrom executed Miller's statement of emergency detention for which I've already concluded that Miler had arguable probable cause to issue. So for the same reasons Hagstrom had arguable probable cause to detain Werling. I will grant Hagstrom's motion for summary judgment.

ORDER

IT IS ORDERED that:

1. Plaintiff's Nicholas Werling's motion for default judgment against defendants Crystal McClain and Andrew Barnhill, Dkt. 63, is DENIED.

2. Plaintiff's motion to suppress and for sanctions, Dkt. 70, is DENIED.

3. The county defendants' motions to dismiss, Dkt; 58, Dkt. 90; Dkt. 94, are GRANTED.

4. Defendant McClain's motion to dismiss, Dkt. 53 and Dkt. 93, is GRANTED.

5. Defendant Hagstrom's motion for summary judgment, Dkt. 78 and Dkt. 96, is GRANTED.

6. The clerk of court is directed to enter judgment accordingly and close the case.

Entered August 14, 2025.

BY THE COURT:

/s/

_____

JAMES D. PETERSON
District Judge